UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,                Case No. 1:05-cr-151

v.                                                  HON. JANET T. NEFF

CHARLES LEE EDKINS,

    Defendant-Movant.
_____/

**OPINION**

Pending before this Court is Defendant Charles Lee Edkins' pro se motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed upon him (Dkt 88, as amended by Dkts 101 & 123). The government has responded to Defendant's motion (Dkts 120 & 151), and Defendant has replied (Dkts 121 & 152). Defendant has also filed a Motion to Appoint Counsel (Dkt 112), to which the government did not file a response. For the reasons that follow, the Court denies both motions and issues this Opinion and Final Order. *See* RULES GOVERNING § 2255 CASES, Rule 11 (referring to the order disposing of a habeas petition as a "final order").

**I. BACKGROUND**

On July 9, 2008, Defendant pleaded guilty before a Magistrate Judge to Counts 1 through 4 of a five-count indictment. Counts 1 through 4 charged Defendant with tax evasion in violation of 26 U.S.C. § 7201 for failing to timely file his tax returns for multiple years and for underreporting his income on those returns he did file. The facts leading up to Defendant's guilty plea were recounted by the Sixth Circuit Court of Appeals as follows:

Charles Edkins's tax evasion closely relates to his ownership of Baby Bliss, Inc. ("Baby Bliss"), a decades-old company that manufactured children's clothing. Edkins purchased an interest in Baby Bliss in 1983 and became its sole shareholder in 1990. Edkins's failure to file personal tax returns for 1995 through 1998 caused the IRS to scrutinize his tax liability, which included his personal use of Baby Bliss corporate funds. That scrutiny prompted the IRS to launch first an audit and then a criminal tax investigation.

This investigation unveiled that Edkins—who eventually filed returns for 1995, 1996, and 1997—had underreported his personal tax liability, failed to file corporate tax returns for Baby Bliss for fiscal years 1996 through 2000, and employed questionable accounting practices in compensating Baby Bliss employees. Between 1995 and 1998, nearly $979,000 was transferred from company bank accounts to Edkins's personal bank accounts, of which $335,500 was transferred back to Baby Bliss bank accounts. Using these funds, Edkins purchased two homes, a Corvette, and a Lincoln Town Car. Based in part on these transfers, the IRS concluded that Edkins failed to report a large portion of his income for the years 1995 through 1998 and owed $245,930 in unpaid personal taxes. The IRS further calculated that, for failing to file Baby Bliss corporate tax returns for fiscal years 1996 through 2000—a period during which the IRS determined Baby Bliss had gross sales of over $2.5 million—Edkins owed $31,135 in taxes. The IRS also faulted Edkins for failing to withhold payroll taxes, treating his employees as both subcontracted labor and actual employees during the same year, and paying cash bonuses. According to the government, these practices—which led Baby Bliss employees to file incorrect individual tax returns—resulted in Baby Bliss underreporting its payroll FICA tax liability by $8,646. Combining the $245,930 in personal taxes, $31,135 in corporate taxes, and $8,646 in payroll FICA taxes owed, the IRS calculated a total tax loss of $285,711.

After this investigation, an IRS agent and an Assistant U.S. Attorney informed Edkins that they planned to seek an indictment against him. Edkins's attorney engaged in plea agreement discussions with the government. Before reaching a resolution, however, Edkins left the United States and moved to the Bahamas, transferring $380,000 from his Michigan bank accounts to a Bahamian branch of a Swiss bank. The government issued an indictment and warrant for Edkins's arrest. After being deported by the Royal Bahamas Police Force, Edkins pleaded guilty (without a plea agreement in place) to evading personal income taxes for calendar years 1995, 1996, 1997, and 1998. The Probation Department issued a presentence report (PSR) with a guidelines range of 30–37 months' imprisonment, based in part on the calculated tax loss ($285,711). Edkins objected to the tax-loss calculation as well as the application of the sophisticated-concealment and abuse-of-a-position-of-trust enhancements.

2

> After hearing testimony from Edkins and two IRS agents, the district court found Edkins to lack credibility, adopted the factual findings in the PSR, overruled Edkins's objections to the PSR, and denied Edkins the PSR-recommended reduction for acceptance of responsibility.

Dkt 60 at 2-4.

This Court sentenced Defendant on December 15, 2008 on Counts 1 through 4 to concurrent terms of 48 months' imprisonment followed by 3 years' supervised release. Restitution was set at $285,711.00. Count 5 was dismissed at Sentencing. The Judgment of Sentence was entered the following day (Dkt 54, as amended by Dkt 55).

Defendant appealed, claiming the statute of limitations barred his prosecution and challenging his advisory guidelines calculation and the restitution order. The Sixth Circuit affirmed his conviction and sentence except with respect to the abuse-of-a-position-of-trust enhancement and the order of restitution (Dkts 60-61). On remand, this Court re-sentenced Defendant on March 10, 2011 on Counts 1 through 4 to concurrent terms of 41 months' imprisonment followed by 3 years' supervised release, setting restitution at $245,930.00. A Second Amended Judgment was entered March 15, 2011 (Dkt 77). Defendant filed a Notice of Appeal from the Second Amended Judgment, but, because Defendant failed to pay the filing fee, the appeal was dismissed for want of prosecution (Dkts 78, 87).[1]

On September 13, 2011, Defendant filed this pro se motion to vacate set aside, or correct his sentence under 28 U.S.C. § 2255 (Dkt 88), alleging the following four grounds:

---

[1] After Defendant served his prison term, he violated the terms of his supervised release, and, accordingly, on January 6, 2012, the Court revoked his supervised release and sentenced him to 24 months' imprisonment (Dkt 115). Defendant filed a Notice of Appeal from the Judgment for Revocation (Dkt 116), and the Sixth Circuit vacated the sentence (Dkt 154). On remand, this Court re-sentenced Defendant to the same sentence (Dkt 157), and Defendant filed a Notice of Appeal from the Amended Judgment of Revocation (Dkt 158), an appeal that remains pending.

| | | |
|---|---|---|
| GROUND 1 | Restitution | |
| GROUND 2 | Treating the (2) 1996 Real Estate Loans as Income is Incorrect | |
| GROUND 3 | Tax Rate for 1998 | |
| GROUND 4 | Sophisticated Means employed to conceal the "Crime of Conviction" (USSG 1B1.3(a)(1)) which was complete on April 15, 1999 | |

On November 29, 2011, with leave of the Court, Defendant amended his § 2255 motion to include two more grounds as follows:

| | | |
|---|---|---|
| GROUND 5 | Resentencing by this Honorable Court on March 10, 2011 Pursuant to the Limited Mandate Handed Down by the Sixth Circuit Court of Appeals (08-2605) on November 18, 2010 | |
| GROUND 6 | The Government Has Improperly Classified Section 162 Valid Business Expenses as Income to Movant Edkins | |

(Dkt 101). The government filed a response, addressing the six grounds presented (Dkt 120). Defendant filed a reply (Dkt 121). Defendant also filed a Motion to Appoint Counsel (Dkt 112), to which the government did not file a response.

On May 23, 2012, with leave of the Court, Defendant amended his § 2255 motion a second time to include three more grounds as follows:

| | | |
|---|---|---|
| GROUND 7 | Denial of Timely Acceptance of Responsibility | |
| GROUND 8 | Criminal History | |
| GROUND 9 | Government Mis-classified a $206,443 spousal support lump sum payment as a property settlement | |

(Dkt 123). The government filed a response on June 29, 2012, addressing the three new grounds for relief (Dkt 151). Defendant filed a reply (Dkt 152).

## II. ANALYSIS

**A.     Motion Standard**

A prisoner who moves to vacate his sentence under 28 U.S.C. § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). To prevail on a § 2255 motion, the movant must demonstrate "the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)).

The general rule is that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Claims of ineffective assistance of counsel are an exception to this general rule. Claims of ineffective assistance of counsel "are more properly available in a post-conviction proceeding under 28 U.S.C. § 2255, after the parties have had the opportunity to develop an adequate record on the issue from which the reviewing court is capable of arriving at an informed decision." *United States v. Williams*, 612 F.3d 500, 508 (6th Cir. 2010) (quoting *United States v. Rahal*, 191 F.3d 642, 645 (6th Cir. 1999)).

To establish ineffective assistance of counsel, a defendant must show both deficient performance by his counsel and prejudice resulting therefrom. *Premo v. Moore*, ___ U.S. ___, 131 S. Ct. 733, 739 (2011) (citing *Knowles v. Mirzayance*, 566 U.S. 111 (2009)). To establish deficient performance, defendant must show that "counsel's representation fell below an objective standard

of reasonableness." *Premo*, 131 S. Ct. at 739 (quoting *Strickland v. Washington,* 466 U.S. 668, 688 (1984)). A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* (quoting *Strickland*, 466 U.S. at 689). The defendant's burden is to show that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* (quoting *Strickland*, 466 U.S. at 687).

Even if a defendant can successfully show his counsel's performance was deficient, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. Therefore, the defendant must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo*, 131 S.Ct. at 739 (quoting *Padilla v. Kentucky*, ___ U.S. ___; 130 S. Ct. 1473, 1485 (2010)). The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 690). As the Supreme Court has made clear, even when reviewing an ineffective assistance of counsel claim de novo, "the standard for judging counsel's representation is a most deferential one." *Premo*, 131 S.Ct. at 740.

**B.     Discussion**

1.    *Ground 1*

As the government points out (Dkt 120 at 8 n.1), Defendant's first ground is not a separate ground for relief. Defendant merely indicates in Ground 1 that "[t]he underlying figures used which represent the $245,930 restitution dollars are incorrect" and that "[c]omponents which are part of this figure are listed under separate grounds below" (Dkt 88 at 4).

2.    *Grounds 2, 3, 4 & 7*

In Grounds 2, 3, 4 and 7, Defendant seeks relief on the same grounds he lost on appeal, reiterating his challenges to this Court's decision to construe $290,000 Defendant withdrew from Baby Bliss to purchase two homes as income, rather than loans (Dkt 88 at 1-4); to calculate the total tax loss with respect to his unfiled 1998 tax return by accepting the IRS's calculation, rather than applying a 20 percent tax rate (*id.* at 4-5); to apply the sophisticated-means enhancement (*id.* at 5-6); and to deduct points for Acceptance of Responsibility (Dkt 123 at 4, Dkt 125 at 1-3).

It is "well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *see also Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999). The Sixth Circuit thoroughly considered the "Loan vs. Income" issue on appeal (Dkt 60 at 5-8), concluding, in light of all the evidence, that it was "unpersuaded" by Defendant's contention that the district court clearly erred in treating the loaned funds as income (*id.* at 8). Similarly, the Sixth Circuit previously considered and rejected the Tax Rate issue, concluding that this Court "did not clearly err in sanctioning this method of calculating Edkins's 1998 tax liability" (*id.* at 9). The Sixth Circuit previously considered and

rejected Defendant's challenge to the Sophisticated Means enhancement, concluding that Defendant's conduct justified this Court's application of the enhancement where Defendant engaged in two "prototypical examples" of sophisticated concealment—using a corporate shell and moving money offshore (*id.* at 13). Last, the Sixth Circuit previously considered and rejected Defendant's Acceptance of Responsibility argument, finding instead that a defendant may properly be denied such a reduction if, as here, the court believes the defendant testified untruthfully (Dkt 60 at 11-12). These four issues have already been decided on direct appeal, and Defendant has failed to demonstrate any exceptional circumstances or new law that would warrant this Court revisiting the issues. Therefore, Grounds 2, 3, 4 and 7 are foreclosed.

To the extent Defendant attempts to recast these four grounds as ineffective-assistance-of-counsel claims, Defendant again fails to make any showing as to the performance or the prejudice prongs under *Strickland*. In any event, counsel is not ineffective for failing to make meritless arguments. *See Chapman v. United States,* 74 F. App'x 590, 593 (6th Cir. 2003) ("Counsel is not required by the Constitution to raise frivolous defenses or arguments to avoid a charge of ineffective representation."); *see also Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986). In sum, Defendant is not entitled to relief under 28 U.S.C. § 2255 on these grounds.

3.   *Grounds 5 & 6*

In Grounds 5 and 6, Defendant seeks relief from certain aspects of the Second Amended Judgment (Dkt 113 at 1-2). Defendant filed a Notice of Appeal from the Second Amended Judgment, but, because Defendant failed to pay the filing fee, the appeal was dismissed for want of prosecution (Dkts 78, 87). As the government points out, Defendant has consequently waived these issues (Dkt 120 at 12, citing *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996)

("nonconstitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process."); *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) ("Sentencing challenges generally cannot be made for the first time in a post-conviction § 2255 motion . . . . Normally, sentencing challenges must be made on direct appeal or they are waived.")), and the non-constitutional sentencing claims are, in any event, not cognizable in a § 2255 motion (*id.* at 13, citing *Reed v. Farley*, 512 U.S. 339, 345 (1994); *Brown v. United States*, 73 F. App'x 875, 876 (6th Cir. 2003)).

To the extent Defendant attempts to recast Ground 6 as an ineffective-assistance-of-counsel claim (Dkt 113 at 2), Defendant fails to make any showing as to the performance or the prejudice prongs. Moreover, as the government points out, Defendant's argument that this Court erred by classifying certain cash withdrawals to himself from the Baby Bliss, Inc. account as personal income rather than reimbursement for "valid business expenses," leaves serious doubt as to how he would prove either deficiency or prejudice where his claim lacks merit and where Defendant has nonetheless not shown that the total tax loss was $200,000 or less, the showing required in order to receive a reduction in his base offense level (Dkt 120 at 15-16).

4. *Ground 8*

Next, Defendant seeks relief on the ground his counsel was ineffective for failing to challenge the Criminal History points he received (Dkt 123 at 5-6, Dkt 125 at 3-4). However, both of Defendant's arguments in support of this ground lack merit.

Specifically, Defendant first argues that this Court should have excluded the one criminal history point he received for a 1996 domestic violence incident for which he received probation because his sentence of probation was less than one year. However, as the government points out,

9

United States Sentencing Guideline (U.S.S.G.) § 4A1.2(c)(1) (Sentences Counted and Excluded) only applies to the listed offenses, or offenses similar to them (Dkt 151 at 3). The offense of domestic violence is not listed, nor is it similar to the listed offenses.

Defendant also argues that this Court should have excluded the two points he received for committing the instant offense while on probation for the 1996 incident because the 1996 incident falls outside the ten-year window in U.S.S.G. § 4A1.2(e)(2) (Applicable Time Period), which instructs a court to count "[a]ny other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense" (Dkt 125 at 4). The government properly points out that this argument also lacks merit because Defendant was sentenced for the domestic violence incident on July 10, 1996 (PSR ¶ 76) and his crimes of income tax evasion began in 1995 and concluded in 1999 (*id.* at ¶¶ 2-5).

In sum, Defendant's Ground 8 does not provide a basis for granting his motion to vacate, set aside, or correct the sentence imposed upon him.

5.  *Ground 9*

Last, Defendant seeks relief on the ground his counsel was ineffective for failing to challenge the classification of a "prepaid spousal support payment" as a property settlement, a misclassification that Defendant argues resulted in an overstatement of his tax liability (Dkt 123 at 5-6, Dkt 125 at 4). However, like its analysis of Defendant's Ground 6, the government properly responds that Defendant cannot prove that his argument in support of Ground 9, even if meritorious, results in prejudice to him because Defendant's tax loss would still exceed $200,000, and his base offense level would therefore remain the same (Dkt 151 at 4-5). Defendant's Ground 9 therefore

does not provide a basis for granting his motion to vacate, set aside, or correct the sentence imposed upon him.

## C. Evidentiary Hearing

In an action to vacate or correct a sentence, a court is generally required to grant a hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No evidentiary hearing is required if the movant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Having decided that the files and records in this case conclusively show that Defendant is not entitled to relief under 28 U.S.C. § 2255, no evidentiary hearing is required to resolve the merits of the pending motion.

## D. Appointment of Counsel

There is no constitutional right to appointed counsel in habeas proceedings. *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (citing *McCleskey v. Zant*, 499 U.S. 467, 495 (1987)). Rather, a federal court has the discretion to appoint counsel in a habeas proceeding where "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B); *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986). A court must appoint counsel if an evidentiary hearing is required to resolve a petitioner's claims. RULES GOVERNING § 2254 CASES, Rule 8(c). Again, having decided that the files and records in this case conclusively show that Defendant is not entitled to relief under 28 U.S.C. § 2255, the Court, in its discretion, further determines that neither the interests of justice nor due process requires the appointment of counsel.

11

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c)(1)(B), the Court must further determine whether to grant a certificate of appealability as to the issues Defendant raises. *See* RULES GOVERNING § 2255 PROCEEDINGS, Rule 11 (requiring the district court to "issue or deny a certificate of appealability when it enters a final order"). The Court must review the issues individually. *See Slack v. McDaniel*, 529 U.S. 473 (2000); *Murphy v. Ohio*, 263 F.3d 466, 466-67 (6th Cir. 2001).

Regarding Defendant's ineffective-assistance-of-counsel issues, constitutional claims that this Court rejected on the merits, the showing required to satisfy § 2253(c) is straightforward: "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Slack,* 529 U.S. at 484. Upon review, this Court finds that reasonable jurists would not find the Court's assessment of Defendant's ineffective-assistance-of-counsel claims debatable or wrong. A certificate of appealability will therefore be denied as to these issues.

On the remaining issues, which this Court rejected on procedural grounds without reaching their merits, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. . . . Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *See Slack*, 529 U.S. at 484. The Court holds that reasonable jurists could not find this

Court's procedural rulings debatable. Therefore, the Court also denies Defendant a certificate of appealability as to the remaining issues presented.

## IV. CONCLUSION

For the foregoing reasons, this Court denies Defendant's § 2255 motion and denies a certificate of appealability as to each issue asserted. The Court also denies Defendant's Motion to Appoint Counsel. A Final Order consistent with this Opinion will be entered.


DATED: February 12, 2013         /s/ Janet T. Neff
                                 JANET T. NEFF
                                 United States District Judge